# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

_____

№ 04-CV-3299 (JFB) (RLM)
_____

TERRY DAVIS, JESSE DAVIS, ROOSEVELT DAVIS, JAMES DAVIS AND MELINDA DAVIS,

Plaintiffs,

VERSUS

THE CITY OF NEW YORK,
SERGEANT RAYMOND JOHNSON,
DETECTIVE ERIK PAULSEN,
DETECTIVE CHRISTOPHER KNAPPENBERGER,
DETECTIVE RAYMOND NEUMAN,
DETECTIVE PATRICK BERGIN,
POLICE OFFICER EDWARD WALDRON, AND
CAPTAIN JOHN MARCHIA,

Defendants.

_____

MEMORANDUM AND ORDER
February 15, 2007
_____

JOSEPH F. BIANCO, District Judge:

Terry Davis ("Terry"), Jesse Davis ("Jesse"), Roosevelt Davis ("Roosevelt"), James Davis ("James") and Melinda Davis ("Melinda") (collectively, "plaintiffs"), bring the instant action against the City of New York, Sergeant Raymond Johnson ("Sergeant Johnson"), Detective Erik Paulsen ("Detective Paulsen"), Detective Christopher Knappenberger ("Detective Knappenberger"), Detective Raymond Neuman ("Detective Neuman"), Detective Patrick Bergin ("Detective Bergin"), Police Officer Edward Waldron ("Officer Waldron") and Captain John Marchia ("Captain Marchia") (collectively, "defendants"), alleging, *inter alia*, claims for violations of their civil rights under 42 U.S.C. § 1983. Defendants moved for summary judgment on all claims. At oral

argument, counsel for plaintiffs abandoned all claims in the Amended Complaint except the following: (1) the false arrest and malicious prosecution claims asserted by plaintiffs Jesse and James; and (2) the excessive force claim asserted by plaintiff Melinda.

For the reasons stated below, summary judgment is denied as to the following: (1) the false arrest claim against the individual defendants; (2) the excessive force claim against the individual defendants; and (3) the malicious prosecution claim against Detective Paulsen. Summary judgment is granted in favor of the individual defendants, except Detective Paulsen, on the malicious prosecution claim.

I. BACKGROUND

A. FACTS

The facts described below are taken from the parties' depositions, declarations, affidavits, exhibits and respective Local Rule 56.1 statements of facts. Upon consideration of a motion for summary judgment, the Court shall construe the facts in the light most favorable to the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 (2d Cir. 2001). Where only one party's 56.1 Statement is cited, the other party does not dispute the facts alleged or has offered no admissible evidence to refute that fact.

On April 20, 2003, Detective Paulsen obtained a search warrant for plaintiffs' apartment in Far Rockaway, Queens, New York ("the residence") for, among other things, two handguns. (Defs.' Rule 56.1 Statement ("Defs.' 56.1") ¶ 2; Declaration of Susan P. Scharfstein ("Scharfstein Decl."), Ex. D.) The warrant granted permission to conduct a search at any time of day or night. (Defs.' 56.1 ¶ 4.) Detective Paulsen had applied for the warrant following his conversation with a confidential informant ("the CI"), who notified the detective that, while smoking marijuana at the residence with plaintiff Roosevelt, he had observed two handguns in Roosevelt's bedroom. (*Id.* ¶¶ 6-7.) The search warrant application indicated that the CI had previously provided information that had led to the recovery of weapons and narcotics, as well as to successful arrests and prosecutions. (*Id.* ¶ 8.) In addition, the affidavit noted that the CI had been found reliable by another state court judge. (*Id.* ¶ 9.) Police officers executed the search warrant on April 23, 2004, at approximately 11:35 p.m. (*Id.* ¶ 10.)

According to plaintiffs' sworn statements, the circumstances of the search were as follows: at the time of the search, there were a large number of individuals present at the residence – Terry, her sons Jesse, Roosevelt and James, her daughter Melinda, and at least six other friends of the family.[1] (Sharfstein Decl., Ex. I.) S.W.A.T officers arrived at the apartment, used profanity and yelled at the plaintiffs to sit down and to get on the floor. (Scharfstein Decl., Ex. I.) After approximately fifteen minutes, uniformed and plainclothes police officers arrived, and the S.W.A.T. officers left the residence. (*Id.*) The officers began handcuffing the plaintiffs, asking their names and addresses and searching each one individually. (*Id.*) During the search, Melinda, who was seventeen years

---

[1] James also testified that his older sister, Thyra Davis, was visiting from Maryland at the time and was present in the residence during the arrest. (Affirmation of John Cobb in Further Opposition ("Cobb Aff. II"), Ex. 2.) Thyra was not mentioned by any other plaintiffs, and is not a party to this action.

2

old at the time, was handcuffed while lying on the floor, and was allegedly kicked in the shoulder by one of the officers. (*Id.*) Jermaine Brown, a friend of Roosevelt's, was allegedly kicked in the face by an officer while handcuffed.[2] (*Id.*) After each individual was searched, he or she was sent to sit in the living room, still handcuffed, and awaited further instructions. (*Id.*) When the police handcuffed Roosevelt, one of the officers asked Roosevelt whether he "had anything on him." (*Id.*) Roosevelt replied that he had three nickel bags of marijuana in his pocket. (*Id.*) The officers continued to search Roosevelt's bedroom, and discovered a bag of rusty bullets in the closet. (Scharfstein Decl., Ex. N; Cobb Aff. II, Ex. 4.)

According to plaintiffs, after the search was complete, the officers stated that Jesse, James and Roosevelt were being arrested. (Sharfstein Decl., Ex. I.) The officers did not provide *Miranda* warnings or inform plaintiffs of the reason for their arrest. (*Id.*) The other individuals at the residence were then uncuffed. (*Id.*) Jesse, James and Roosevelt, still handcuffed, were placed into a police van and brought to central booking. (*Id.*) They remained in handcuffs while waiting in central booking for three hours, after which they were released. (*Id.*)

According to the police reports, Jesse, James and Roosevelt were arrested for the Class A misdemeanor of criminal possession of marijuana in the fourth degree, for a quantity of two ounces of marijuana. (Scharfstein Decl., Ex. P.) In a state criminal court affidavit, Detective Paulsen stated that the NYPD had recovered twenty-four bags of marijuana from a dresser in the rear left bedroom, as well as an additional four bags of marijuana and thirty-one live rounds of .32-caliber ammunition from the closet of the rear right bedroom. (*Id.*) The affidavit stated that plaintiffs Jesse and James were located in the rear left bedroom, while plaintiff Roosevelt was located in the rear right bedroom. (*Id.*) The property clerk's invoices and lab report indicate that twenty-eight bags of marijuana, weighing a total of one ounce and 34.2 grams, were obtained from Jesse, and that thirty-one live .32-caliber rounds were recovered from Roosevelt. (Sharfstein Decl., Ex. G; *see also* Scharfstein Decl., Ex. H.) The officers also told Roosevelt that they had seized drug paraphernalia, in the form of individual sandwich bags, from the residence. (Scharfstein Decl., Ex. N; Cobb Aff. II, Ex. 4.)

However, plaintiffs dispute defendants' factual allegations regarding the location and amount of marijuana. First, plaintiffs contend that the three nickel bags in Roosevelt's pocket, rather than the alleged twenty-eight bags listed in the report, constituted the only marijuana present at the residence at the time of the arrest. (Pls.' Supp. Br., at 1-2.) In deposition testimony, both James and Jesse stated that they were not aware of any marijuana on the premises. James testified as follows:

> Q. Have you ever seen illegal drugs in your home?
> A. No.
> Q. When your friends come over or your cousins come over, you have never seen anyone smoking marijuana have you?
> A. No.

(Cobb Aff. II, Ex. 2.) Likewise, Jesse testified as provided below:

---

[2] Jermaine Brown is not a party to this action.

> Q: Did [the police officers] say where they had found the marijuana?
> A. No.
> Q. You don't know where they had found it?
> A. No.
> Q. Had you ever seen marijuana in your apartment before?
> A. No.
> Q. So you had no idea where it would have come from?
> A. Uh-uh.

(Cobb Aff. II, Ex. 3.) In an affidavit, Roosevelt admitted to possessing three "nickel" bags of marijuana in his pocket, as well as to having put the rusted ammunition into his closet at an earlier time, stating that "a plainclothes police officer came into my room and asked me if I had anything on me. At which point I informed him that I had three nickel bags of marijuana in my pocket." (Scharfstein Decl., Ex. I.) In addition, in his deposition testimony, Roosevelt testified about whether marijuana was present at the residence:

> Q. Is it possible, as far as you know, that someone had marijuana in the apartment?
> A. Yes.
> Q. You just hadn't seen it yet?
> A. Yes.
> Q. But you are not surprised to hear that there may have been marijuana in the apartment?
> A. I don't like smoke a lot. I was just smoking it and using it.
> Q. That night you never saw it though?
> A. Did I ever see it.
> Q. Did you ever see it?
> A. No.

(Scharfstein Decl., Ex. N; Cobb Aff. II, Ex. 4.) In support of their position that no marijuana was discovered in the apartment other than on the person of Roosevelt, plaintiffs contend that there are a number of inconsistencies in the facts and evidence contained in the police reports and other documents prepared by the defendants, which are discussed *infra*.

During the criminal proceedings below, Judge Steven Paynter of the Criminal Court of the City of New York, Queens County, denied a defense motion to suppress evidence recovered as a result of the search warrant execution on September 3, 2003. (Scharfstein Decl., Ex. Q.) Subsequently, all charges against James, Jesse and Roosevelt were dismissed pursuant to the New York speedy trial law, N.Y. Crim. Proc. § 30.30, by agreement of the parties. (Am. Compl., ¶ 14.)

### B. Procedural History

On July 30, 2004, plaintiffs filed the instant complaint against the City of New York and unknown police officers. On January 20, 2005, plaintiffs filed an amended complaint, adding seven individually named officers. Defendants moved for summary judgment on all claims on November 13, 2006, and oral argument was held on November 20, 2006. As noted *supra*, at oral argument, plaintiffs abandoned all claims, with the exception of false arrest and malicious prosecution (asserted by plaintiffs James and Jesse) and excessive force (asserted by plaintiff Melinda) under Section 1983.[3] On December 7 and December 22, 2006, both

---

[3] Given that plaintiffs' only remaining claims pertain to James, Jesse and Melinda Davis, summary judgment is granted against plaintiffs Terry and Roosevelt Davis.

parties submitted supplemental briefing on the issue of whether there was probable cause to arrest Jesse and James Davis.

## II. DISCUSSION

### A. STANDARD OF REVIEW

The standards for summary judgment are well settled. Pursuant to Federal Rule of Civil Procedure 56(c), a court may not grant a motion for summary judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Globecon Group, LLC v. Hartford Fire Ins. Co.*, 434 F.3d 165, 170 (2d Cir. 2006). The moving party bears the burden of showing that he or she is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties" alone will not defeat a properly supported motion for summary judgment. *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (internal quotations omitted). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (internal quotations omitted).

### B. FALSE ARREST

Plaintiffs Jesse and James assert claims for false arrest pursuant to 42 U.S.C. § 1983. Plaintiffs' claims of false arrest derive from the Fourth Amendment right of an individual to be free from unreasonable seizure, including freedom from arrest absent probable cause. *See Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (citations omitted); *Caldarola*, 298 F.3d at 161. Defendants argue that the arresting officers had probable cause to arrest Jesse and James for possession of marijuana based upon the seizure of marijuana during the execution of the search warrant from the bedroom that they shared in the apartment, and where they were present at the time

5

defendants assert the marijuana was seized.[4] Both Jesse and James dispute that there was any marijuana in their room. Instead, they argue that all of the marijuana seized during the search was found on the person of Roosevelt and, thus, no probable cause existed for their arrest. As set forth below, after a careful review of the record, the Court finds that this material issue of disputed fact cannot be resolved on summary judgment.

"The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest,' whether that action is brought under state law or under Section 1983." *Weyant*, 101 F.3d at 852 (2d Cir. 1996) (citing *Broughton v. State*, 37 N.Y.2d 451, 458 (N.Y. 1975) (holding that under New York law, "justification may be established by showing that the arrest was based on probable cause"); *Singer v. Fulton Cty. Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause.")). A determination of probable cause to arrest is based upon the "totality of the circumstances," *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (citing *Illinois v. Gates*, 462 U.S. 213, 230 (1982)), and is established "when the arresting officer has 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'"[5] *Singer*, 63 F.3d at 119 (quoting *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir. 1993) (citation omitted)); *Weyant*, 101 F.3d at 852 (citing *Dunaway v. New York*, 442 U.S. 200, 208 n.9, (1979)) (additional citations omitted). "The question of whether or not probable cause existed may be determinable as a matter of law if there is no dispute as to the pertinent events and the knowledge of the officers . . . or may require a trial if the facts are in dispute." *Weyant*, 101 F.3d at 852 (citations omitted).[6] Where an issue of probable cause is "factual in nature," it must be presented to a jury. *See Moore v. Comesanas*, 32 F.3d 670, 673 (2d Cir. 1994).

As noted above, defendants claim that Jesse and James were arrested because marijuana was found in the bedroom that they shared and occupied at the time of the search.

---

[4] Defendants' motion focuses on the probable cause issue as it relates to the search generally, rather than arguing that the evidence against a particular individual defendant, in terms of his alleged participation in the unconstitutional conduct, is lacking.

[5] In New York State, "a police officer may arrest a person for . . . a crime when he has reasonable cause to believe that such person has committed such crime, whether in his presence or otherwise." N.Y. Crim. Proc. Law § 140.10(1)(b). "'Reasonable cause to believe that a person has committed an offense' exists when evidence or information which appears reliable discloses facts or circumstances which are collectively of such weight and persuasiveness as to convince a person of ordinary intelligence, judgment and experience that it is reasonably likely that such offense was committed and that such person committed it." N.Y. Crim. Proc. Law § 70.10.

[6] "If, following the arrest, the plaintiff was convicted of the charges against him, that conviction normally 'would be conclusive evidence of probable cause.'" *Weyant*, 101 F.3d at 852 (quoting *Broughton*, 37 N.Y.2d at 458). However, in this instance, no criminal court adjudication on the merits of the charges against plaintiffs has taken place.

In particular, police contend that they "recovered twenty four (24) bags of marijuana on top of a dresser, in the rear left bedroom . . . where defendant Jessie [sic] Davis, and defendant James Davis were also located." (Sharfstein Decl., Ex. F.) Assuming the defendants' version of the facts to be true, there is no question under well-established law that there was probable cause to arrest both Jesse and James. In particular, as residents of the household and occupants of the bedroom in which contraband was found, there would have been sufficient probable cause to arrest them for constructive possession of the marijuana in plain view that was seized in their bedroom by the officers. Under New York law, a person "constructively possesses tangible property when he exercises 'dominion and control' over the property with a sufficient level of control over the area in which the contraband is found." *Torres v. Hanslmaier*, 94 Civ. 4082 (MGC), 1995 U.S. Dist. LEXIS 6193, at *6-7, (S.D.N.Y. May 8, 1995) (holding that where a jury could find that defendant resided at an apartment, there was "circumstantial evidence that he had constructive possession over the contraband contained within it"); *Cammick v. City of New York*, No. 96 Civ. 4374 (RPP), 1998 U.S. Dist. LEXIS 18006, at *7 (S.D.N.Y. Nov. 17, 1998) (constructive possession of illegal contraband may be attributed to all persons exercising "dominion and control over the area in which the property is found"); *Torres v. Hanslmaier*, 94 Civ. 4082 (MGC), 1995 U.S. Dist. LEXIS 6193, at *7, (S.D.N.Y. May 8, 1995) (where a jury could find that defendant resided at apartment, there was "circumstantial evidence that he had constructive possession over the contraband contained within it").

In *Cammick*, police searched plaintiffs' apartment pursuant to a warrant, and recovered an illegal weapon from a closet in the plaintiffs' home. *Cammick*, 1998 U.S. Dist. LEXIS 18006, at *7. As in the instant case, plaintiffs argued that the police did not have sufficient knowledge to conclude that the alleged contraband found belonged to either resident of the apartment. *Id.* The district court held that the gun "was still in the plaintiffs' constructive possession because they jointly exercised dominion and control over their apartment. Accordingly, the officers had adequate grounds to arrest the plaintiffs." *Id.* at *8. Likewise, other federal courts have held that where evidence of illegal activity is found at a residence in plain view, a reasonable officer may fairly conclude that the residents participate in or have knowledge of such activity. *See, e.g., United States v. Jones*, 72 F.3d 1324, 1332-33 (7th Cir. 1995) (given that defendant was a resident of a private household where his spouse was engaging in counterfeiting activity and evidence of such activity lay in plain view, "one could fairly conclude that the arresting agents had probable cause particularized as to [defendant] himself"); *United States v. Pennington*, 287 F.3d 739, 747 (8th Cir. 2002) (evidence of drug manufacturing in plain view provided probable cause to arrest resident).

Furthermore, in *United States v. Heath*, 455 F.3d 52, 57-58 (2d Cir. 2006), the Second Circuit held that where police discovered cocaine in plain view at the bottom of a stairwell, it was of no import whether the defendant, a guest at the residence, "actually saw the bags of cocaine." Because the defendant "could see them, and in fact would be expected to see them, in the regular course of walking through the small home's public spaces," a reasonable police officer could properly conclude that the defendant "had committed or was committing a crime." *Id.* at 57. Based upon these circumstances, the

Second Circuit concluded that "those who are permitted to observe obvious criminal activity in a home are, absent indications to the contrary, likely to be complicit in the offense." *Id.* at 57 (citing *Pennington*, 287 F.3d at 747 and *Jones*, 72 F.3d at 1332-33).

Although probable cause for the arrest of Jesse and James existed if the marijuana was seized on top of a dresser in their bedroom during the search, plaintiffs dispute that any such marijuana was in the room and have taken the position that the only marijuana seized on that day by the police came from the person of Roosevelt. Plaintiffs point to several pieces of evidence in the record to support their position. First and foremost, both Jesse and James denied under oath in their depositions any awareness that there was marijuana on the premises. (Cobb Aff. II, Exs. 2, 3.) On that issue, it should be noted that James testified that he was asleep when the police arrived. (Cobb Aff. II, Ex. 2.) Given the presence of other people in the bedroom and evidence that a party was taking place in the residence at the time, he obviously would not have been in the best position to testify about the presence or absence of marijuana in the bedroom, which could have been placed there during the party, after he had fallen asleep. (*Id.*) However, Jesse testified that he was playing video games at the time of the search in the bedroom where the officers assert that they seized the marijuana on the dresser. (Cobb Aff. II, Ex. 3) Given that it was Jesse's bedroom and that he was awake at the time of the search, his denial regarding the presence of marijuana in the bedroom is material because, drawing all reasonable inferences in plaintiffs' favor, he ostensibly would have seen or noticed twenty-four bags of marijuana on a dresser in the room, even if they had been placed there by someone else.[7] (*Id.*)

In addition to the denials by Jesse and James, plaintiffs point to purported errors and inconsistencies in various police reports and court documents in an effort to undermine the defendants' contention that marijuana was seized from the bedroom occupied by Jesse and James. First, plaintiffs argue that, inconsistent with the criminal court affidavit stating that twenty-four bags of marijuana were seized from Jesse and James and four bags were seized from Roosevelt, the property clerk's invoice attributes possession of all twenty-eight bags, which are listed as a single item, to Jesse, with the notation "pursuant to lawful search warrant #433 above property was recovered from *bedroom of above deft*." (*See* Scharfstein Decl., Ex. G; Cobb Aff. II, Ex. 6.) (emphasis added). In addition to pointing out this inconsistency, plaintiffs note that the seized items were not vouchered and weighed separately in order to preserve evidence against each individual defendant. Third, plaintiffs point to evidence that, although the ammunition was seized from Roosevelt's bedroom and he admitted to ownership of same (Scharfstein Decl., Ex. N; Cobb Aff. II, Ex. 4) and the ammunition was (properly) attributed to Roosevelt in the clerk's property invoice (Scharfstein Decl., Ex. G; Cobb Aff. II, Ex. 6.), the criminal court affidavit alleges that all of the plaintiffs "acting in concert" illegally possessed ammunition, which plaintiffs contend has no basis in fact. Finally, plaintiffs contend that

---

[7] According to James and contrary to Jesse's testimony, Jesse was also asleep at that time. (Cobb Aff. II, Ex. 2.) However, the fact that James' testimony on this issue may undermine Jesse's testimony is a credibility issue that the Court cannot resolve on a summary judgment motion.

they were improperly charged with the Class A misdemeanor of possession of marijuana in the first degree, N.Y. Penal Law 221.15, which requires possession of more than two ounces of marijuana. However, according to plaintiffs, the lab analysis indicates that the weight of the seized marijuana was in fact only one ounce and 34.2 grams, which actually falls under the lessor offense of Class B possession of more than 25 grams of marijuana, pursuant to N.Y. Penal Law 221.10. (Scharfstein Decl., Ex. H.)

Viewing all of the evidence in its entirety, and drawing all reasonable inferences in plaintiffs' favor, the Court concludes that there is a material issue of fact regarding whether marijuana was found in Jesse and James' bedroom or was seized solely from the person of Roosevelt. If plaintiffs' testimony is credited and the only marijuana in the residence was contained on the person of Roosevelt, rather than in plain view in the bedroom, a reasonable jury could conclude that there was an insufficient basis for probable cause to arrest Roosevelt's brothers, Jesse and James. In *Ybarra v. Illinois*, 444 U.S. 85, 91 (1979), the Supreme Court explained:

> [A] person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person . . . Where the standard is probable cause, a search or seizure of a person must be supported by probable cause particularized with respect to that person.

*See also United States v. Short*, 570 F.2d 1051, 1053 (D.C. Cir. 1978) ("Probable cause to make an arrest requires a showing that the police had enough information to warrant a man of reasonable caution in the belief that a crime has been committed and that the person arrested has committed it.") (internal quotations and citations omitted); *Dallas v. Goldberg*, 95 Civ. 9076 (DLC), 1997 U.S. Dist. LEXIS 18390, at *17-18 (S.D.N.Y. Nov. 20, 1997) ("An arrest requires not only probable cause to believe that a crime had been committed, but also probable cause to believe that it has been committed *by the person arrested*.") (emphasis added). Thus, "[m]ere presence at a known drug location is not sufficient to support probable cause to arrest." *Dallas*, 1997 U.S. Dist. LEXIS 18390, at *18 (finding that plaintiff had raised a question of fact as to probable cause to arrest him where he resided at a rooming house which was a "known drug location" and another individual next to plaintiff on the porch threw bags of cocaine onto the ground as police approached).

In short, under the applicable standard, plaintiffs have sufficiently placed in dispute a material issue of fact as to whether the officers had probable cause to arrest Jesse and James for possession of marijuana.[8] *See*

---

[8] Even if the officers' initial decision to arrest plaintiffs was based upon the possession of marijuana rather than the possession of ammunition found in Roosevelt's closet, probable cause on the ammunition charge could still defeat a false arrest claim. *See Jaegly v. Couch*, 439 F.3d 149, 154 (2d Cir. 2006) ("[A] plaintiff is not entitled to damages under § 1983 for false arrest so long as the arrest itself was supported by probable cause, regardless of whether probable cause supported any individual charge identified by the arresting officer at the time of arrest."). However, for reasons discussed *infra* in connection with the malicious prosecution claim, there is also an insufficient basis on the current record from which to find probable cause existed as a matter of law as to this ammunition charge.

9

*Weyant*, 101 F.3d at 852 (finding of probable cause requires a trial where facts are in dispute); *see, e.g., Hamlett v. Town of Greenburgh*, No. 05 Civ. 3215 (MDF), 2007 U.S. Dist. LEXIS 3201, at *13 (S.D.N.Y. January 16, 2007) (same). Although defendants argue that plaintiffs' false arrest claim is based primarily (if not solely) on their own testimony, which is contradicted by the evidence offered by defendants, the Court is not in a position to resolve this factual dispute, including any credibility assessments, by summary judgment.

## C. MALICIOUS PROSECUTION

Plaintiffs Jesse and James also assert claims of malicious prosecution pursuant to 42 U.S.C. § 1983. According to plaintiffs, the Constitutional violation underlying their malicious prosecution claim arises from Jesse and James' arrest without probable cause. *See Murphy v. Lynn*, 118 F.3d 938, 944 (2d Cir. 1997) (citing *Albright v. Oliver*, 510 U.S. 266, 274-75 (1994)). Once a Fourth Amendment basis for the malicious prosecution claim has been demonstrated, the plaintiff must show that (1) the defendant commenced or continued a criminal proceeding against the plaintiff; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for the criminal proceeding, and (4) the defendant initiated the criminal proceeding out of actual malice.[9] *DiBlasio v. City of New York*, 102 F.3d 654, 657 (2d Cir. 1996). Defendants contend that plaintiffs cannot satisfy the first, second and fourth elements of a malicious prosecution claim: commencement of a criminal proceeding, lack of probable cause, and actual malice.

1. Commencement of Criminal Proceeding

As to prong one, with the exception of defendant Paulsen, the other individual defendants appear to be police officers who were involved in the search and arrests at the residence. However, plaintiffs have failed to point to any evidence in the record that suggests that these officers were involved in any manner in the subsequent decision to prosecute Jesse and James. "The independent, discretionary actions of the [Queens County] District Attorney's Office served to break any causal connection between [d]efendants and the prosecution commenced against [p]laintiff." *Stephenson v. Rosa*, 03 Civ. 8503 (LAP), 2006 U.S. Dist. LEXIS 7390, at *8 (E.D.N.Y. Feb. 24, 2006). Other than defendant Paulsen, plaintiffs have not alleged any facts indicating that the police officer defendants deceived the Queens County District Attorney to proceed with the prosecution; nor did plaintiffs allege facts to indicate that these police officers were the complaining witnesses. In short, plaintiffs have not set forth any evidence that would allow the chain of causation to exist as to these defendants. Instead, defendants are only alleged to have effectuated the search and arrests and, though the actual arrests allegedly violated constitutional rights, plaintiffs have failed to provide any evidence that these defendants caused the accusatory instrument to be signed. *See Townes v. City of New York*,

---

[9] Generally, since a malicious prosecution action is based upon abuse of the judicial process, a plaintiff pursuing such a claim under Section 1983 must show that the seizure resulted from the initiation or pendency of judicial proceedings. *Murphy*, 118 F.3d at 944. Defendants concede that "[a]lthough plaintiff also must show a post-arraignment deprivation of liberty . . . that element is not at issue here." (Defs.' Br. at 14) (citation omitted).

176 F.3d 138, 147 (2d Cir. 1999) (holding that "the chain of causation between a police officer's unlawful arrest and a subsequent conviction and incarceration is broken by the intervening exercise of independent judgment"). Accordingly, the malicious prosecution claim against the individual defendants, other than Detective Paulsen, must be dismissed.[10]

The analysis as to defendant Paulsen, however, is different. The police reports indicate that Paulsen not only participated in the search and arrest of James and Jesse at their residence, but also attributed marijuana found at the residence to Jesse in a property clerk's invoice and lab report, and, in a criminal court affidavit, accused both defendants of criminal possession of marijuana, leading to the filing of criminal charges against both plaintiffs. Thus, plaintiffs contend that he provided false information that directly led to their prosecution. Under such circumstances, the Court cannot conclude as a matter of law that plaintiffs are unable to satisfy the first element as to defendant Paulsen. *See, e.g., Webster v. City of New York*, 333 F. Supp. 2d 184, 198 (S.D.N.Y. 2004) (denying summary judgment where the defendant police officers were the complaining witnesses).

2. Probable Cause

As in the case of false arrest, the existence of probable cause to prosecute entitles the defendant to summary judgment in his favor. *Williams v. City of New York*, No. 20 Civ. 3693 (CBM), 2003 U.S. Dist. LEXIS 19078, at *16 (S.D.N.Y. October 23, 2003). In the context of a malicious prosecution claim, probable cause is "the knowledge of facts, actual or apparent, strong enough to justify a reasonable man in the belief that he has lawful grounds for prosecuting the defendant in the manner complained of." *Rounseville v. Zahl*, 13 F.3d 625, 629-30 (2d Cir. 1994). As discussed *supra*, there is a disputed issue of material fact regarding probable cause as to whether the marijuana was recovered from the room where James and Jesse were located at the time of the search or whether it was found only on the person of Roosevelt.

The probable cause issue as it relates to the prosecution of James and Jesse for possession of ammunition, which defendants assert was found in the closet in Roosevelt's bedroom, is also disputed. James and Jesse argue that there is no evidence whatsoever that would support probable cause in a prosecution against them for constructive possession of the bullets hidden in Roosevelt's closet. If the assertion by James and Jesse that they possessed no marijuana in their bedroom is credited by the jury and there is no evidence directly or indirectly linking them to the bullets in their brother's closet such that one could conclude they exercised some dominion and control over such bullets, they may be able to demonstrate a lack of probable cause on the charge of constructive possession of those bullets. *See, e.g., United States v. Jenkins*, 90 F.3d 814, 818 (3rd Cir. 1996) ("Dominion and control are not established, however, by mere proximity to the drug, or mere presence on the property where it is located or mere association with the person who does control the drug or

---

[10] Because the Court finds that plaintiffs fail to satisfy the first element of a malicious prosecution claim as to Sergeant Johnson, Detective Knappenberger, Detective Neuman, Detective Bergin, Officer Waldron, and Captain Marchica, the Court need not address the remaining elements as to them.

11

property.") (citation and quotations omitted); *see also United States v. Brown*, 3 F.3d 673, 681 (3rd Cir. 1993) ("[W]hile the evidence may be sufficient to show that [the defendant] was residing at the [co-defendant's] home and that she knew that drugs were in the house, the evidence is not sufficient to support a finding that she exercised dominion and control over the drugs.").

Based upon the current record and the factual disputes underlying the probable cause issue, this Court finds that dismissal of the malicious prosecution claim on summary judgment based upon the probable cause element is unwarranted.

### 3. Actual Malice

Under New York law, actual malice "does not require a plaintiff to prove that the defendant "was motivated by spite or hatred," but that he initiated the criminal proceeding "due to a wrong or improper motive, something other than a desire to see the ends of justice served." *Rounseville*, 13 F.3d at 629-30. Actual malice typically is shown by circumstantial evidence, including a lack of probable cause. *Martin v. City of Albany*, 42 N.Y.2d 13, 17 (N.Y. 1977). New York courts have held that, while

> [L]ack of probable cause to institute a criminal proceeding and proof of actual malice are independent and indispensable elements of a malicious prosecution action, the absence of probable cause does bear on the malice issue. . . . A jury may infer the existence of actual malice from the absence of probable cause.

*Maxwell v. New York*, 554 N.Y.S.2d 502, 505 (N.Y. App. Div. 1990) (citing *Martin*, 42 N.Y.2d at 17); *Rounseville*, 13 F.3d at 631 (noting that under New York law, actual malice and lack of probable cause are closely related); *see also Lowth v. Town of Cheektowaga*, 82 F.3d 563, 573 (2d Cir. 1996) ("In most cases, the lack of probable cause – while not dispositive – tends to show that the accuser did not believe in the guilt of the accused, and malice may be inferred from the lack of probable cause.") (citation and internal quotation marks omitted); *Mesiti v. Wegman*, 736 N.Y.S.2d 66, 70 (N.Y. App. Div. 2003) ("[T]he jury was able to 'infer the existence of actual malice from the fact that there was no probable cause to initiate the proceeding.") (citation omitted). Where, as here, the issue of probable cause to prosecute plaintiffs Jesse and James is a question for the jury, the determination of actual malice also cannot be made on summary judgment.

In sum, the Court finds that summary judgment should be denied with respect to plaintiff's malicious prosecution claim against Detective Paulsen, but granted as to the remaining individual defendants.

### D. EXCESSIVE FORCE

Plaintiff Melinda alleges, pursuant to 42 U.S.C. § 1983, a claim of excessive force in violation of the Fourth Amendment. In particular, Melinda alleges that, during the search, an unidentified officer kicked her while she was already handcuffed and laying face down on the floor. Melinda stated:

> I got onto the ground and was immediately handcuffed. . . . I continued to remain on the cold floor dressed only in my PJ's, when about fifteen minutes later one of the officers wearing a mask, holding a flashlight, kicked me in the shoulder

and asked me, in a threatening tone, "How the f*** old are you?"

(Cobb. Aff., Ex. 9; *see also* Scharfstein Decl., Ex. K.)[11] According to Melinda, at the time of the incident, she experienced pain from the kick. (Scharfstein Decl., Ex. K.) Melinda did not subsequently seek medical treatment for the alleged injury, but she testified that her shoulder was red and sore and that she continued to experience pain for a couple of days. (*Id*.) Moreover, although Melinda continued to have occasional problems with that shoulder years after the incident, she stated that she is unsure whether she can specifically connect these long-term problems with the alleged incident during the search. (*Id*.)

Defendants argue that this alleged use of excessive force was justified because it was incidental to the valid execution of the search warrant or, in the alternative, it was not sufficiently serious to implicate constitutional rights because the alleged injury was not so severe as to cause her to seek any medical treatment. For the reasons set forth below, the Court disagrees and concludes, based upon the application of well-established Second Circuit case law to the facts of this case, that summary judgment must be denied.

A police officer's use of force is excessive in violation of the Fourth Amendment, "if it is objectively unreasonable 'in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation.'" *Maxwell v. City of New York*, 380 F.3d 106, 108 (2d Cir. 2004) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)).[12] More specifically, "[d]etermining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396 (citations and internal quotations omitted). Moreover, if a police officer does not

---

[11] Although the focus of her excessive force claim is the kick, Melinda also alleges that an officer used force in handcuffing her, prior to the incident involving the kick:

> On April 24, 2003, I was in my bedroom sleeping when I was woken up by random noises. I heard a loud "bang" and then a lot of footsteps. I got up and opened my door to have a gun with a flashlight on top of it pointed at my face. I reacted by putting my hands up and asking what was going on. I got no response other than being slammed into the wall and told to, "Shut the f*** up and get on the floor!" I got down onto the ground and was immediately handcuffed.

(Cobb Aff., Ex. 9.) Melinda also testified that she saw another individual in the apartment, Jermaine Brown, get kicked in the face by an officer. (Scharfstein Decl., Ex. K; *see also supra*, n.2.)

[12] Although Melinda was not arrested, the Court analyzes her claim as a Fourth Amendment claim, rather than a Fourteenth Amendment claim, because it is undisputed that she was detained during the execution of the search. *See Tierney v. Davidson,* 133 F.3d 189, 199 (2d Cir. 1998) ("Plaintiffs do not assert that they were arrested or seized, and therefore these claims fall outside the Fourth Amendment protections applied in *Graham v. Connor*, . . . and are governed instead by the Due Process Clause of the Fourteenth Amendment.") (citation omitted). In any event, the outcome in the instant case would not change even were the Court to analyze the claim applying the test for excessive force under the Due Process Clause.

13

personally use excessive force, but witnesses the use of excessive force by other officers, that witnessing officer may be liable for failing to intercede to prevent the constitutional violations of other officers where the officer had reason to know such force was being used and had a realistic opportunity to intercede. *See Provost v. City of Newburgh*, 262 F.3d 146, 168 (2d Cir. 2001) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence.") (citation and internal quotations omitted); *Curley v. Vill. of Suffern*, 268 F.3d 65, 72 (2d Cir. 2001) ("Failure to intercede results in liability where an officer observes excessive force is being used or has reason to know that it will be."); accord *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988).

Physical force is often necessary when effectuating arrests or executing search warrants and, thus, "not every push or shove" is unconstitutionally excessive, "even if it may later seem unnecessary in the peace of a judge's chambers." *Maxwell*, 380 F.3d at 108 (citation and internal quotation marks omitted). The analysis involves an inquiry into the totality of the circumstances, "including the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of others and whether he is actively resisting arrest." *Sullivan v. Gagnier*, 225 F.3d 161, 165 (2d Cir. 2000) (citations omitted).

Defendants have failed to demonstrate the absence of a material fact with respect to Melinda's excessive force claim. Defendants argue that the force employed was objectively reasonable as a matter of law because it was incidental to the execution of a valid search warrant. However, countervailing testimony exists in the record in the form of Melinda's sworn testimony that, if believed, indicates that: (1) she was lying on the floor handcuffed during the execution of the search; and (2) while she was lying on the floor, an officer kicked her in the shoulder without any provocation or resistance on her part and, using profanity, asked about her age. If her account is credited, and thus she was intentionally kicked in the shoulder for no reason while handcuffed on the floor, the Court cannot hold that the alleged gratuitous use of force by an officer can constitute an objectively reasonable use of force as a matter of law. *See, e.g., Johnson v. City of New York*, No. 05 Civ. 2357 (SHS), 2006 WL 2354815, at *5 (S.D.N.Y. Aug. 14, 2006) (denying summary judgment on claim of excessive force during execution of a search and noting that "[w]hile not every push or shove violates the Fourth Amendment, . . . there surely would be no objective need to 'stomp' and 'kick' an individual already under police control") (citations and quotations omitted); *Pierre-Antoine v. City of New York*, No. 04 Civ. 6987 (GEL), 2006 WL 1292076, at *4 (S.D.N.Y. May 9, 2006) (holding that repeatedly striking a subdued individual would constitute an objectively unreasonable use of force under the Fourth Amendment); *Graham v. Springer*, No. 03-CV-6190 (CJS), 2005 WL 775901, at *6 (W.D.N.Y. Apr. 5, 2005) (denying summary judgment on excessive force claim where plaintiff's evidence indicated that he was kicked while lying on the ground in handcuffs); *Jones v. Ford*, No. 00-CV-0934, 2002 WL 1009733, at *4 (M.D.N.C. Feb. 15, 2002) ("If Defendant . . . did in fact kick Plaintiff several times while he was on the ground handcuffed, such acts could constitute excessive force in violation of the Fourth Amendment.") (citing *Hafner v. Brown*, 983 F.2d 570 (4th Cir.

1992)).

Defendants also argue, in the alternative, that Melinda's excessive force claim is without merit because of the limited nature of her alleged injuries, in that she never sought medical treatment and testified that she was only red and sore for a couple of days. The Court recognizes that there may be certain circumstances where the alleged unconstitutional act and injury are so *de minimis* that it cannot rise to a constitutional violation as a matter of law. *See, e.g., Vogeler v. Colbath*, No. 04-CV-6071 (LMS), 2005 WL 2482549, at *11 (S.D.N.Y. Oct. 6, 2005) (granting summary judgment for defendant where plaintiffs failed to demonstrate that the alleged action by the police officer "was any more than de minimis force exerted during the course of an arrest following the raid of a suspected drug trafficking locale"); *Johnson v. Police Officer #17969*, No. 99-CV-3964 (NRB), 2000 WL 1877090, at *5 (S.D.N.Y. Dec. 27, 2000) (dismissing excessive force claim based on admission that plaintiff resisted arrest and only alleged minor injuries); *cf. Tierney*, 133 F.3d at 199 (finding qualified immunity existed for excessive force claim under Due Process Clause, where the claim was related to police conduct toward individuals present during execution of a search, because the force used "was de minimis, necessary, appropriate, and benign"); *Griffen v. Crippen*, 193 F.3d 89, 92 (2d Cir. 1999) (noting, in addressing excessive force claim under the Eighth Amendment, that "*de minimis* uses of force generally do not suffice to state a constitutional claim"). However, a plaintiff need not sustain severe injury to maintain a claim that the use of force was objectively unreasonable under the Fourth Amendment. *See Maxwell*, 380 F.3d at 108 ("[W]e have permitted a plaintiff's claim to survive summary judgment on allegations that, during the course of an arrest, a police officer twisted her arm, 'yanked' her, and threw her up against a car, causing only bruising.") (citing *Robison v. Via*, 821 F.2d 913, 924-25 (2d Cir. 1987)); *see also Hayes v. New York City Police Dep't,* No. 06-0595-PR, 2007 WL 130332, at *1 (2d Cir. Jan. 16, 2007) (summary order) (citing *Maxwell* and noting that "we have permitted claims to survive summary judgment where the only injury alleged is bruising"); *Robison,* 821 F.2d at 924 ("If the force used was unreasonable and excessive, the plaintiff may recover even if the injuries inflicted were not permanent or severe.").

In the instant case, Melinda testified that, at a minimum, the officer's alleged kick caused redness and soreness to her shoulder for a couple of days. Under the circumstances of this case, the Court cannot conclude as a matter of law, given the disputed facts, that the police conduct and resulting injury alleged by Melinda in her sworn testimony are *de minimis*. Although a jury may consider the lack of serious injury as evidence that the implemented force was not excessive, and may weigh it against Melinda's testimony, it does not entitle defendants to judgment as a matter of law because the Court must view the evidence in the light most favorable to plaintiffs. *See Pierre-Antoine*, 2006 WL 1292076, at *5 (noting that although the lack of severe injury may be considered by a jury as evidence that force was not excessive, it did not entitle defendants to judgment as a matter of law); *see Murray v. Williams*, No. 05-CV-9438 (NRB), 2007 WL 430419, at *7 (S.D.N.Y. Feb. 7, 2007) (refusing to find alleged force was *de minimis* where plaintiff alleged a laceration to his lower lip, a bloody nose, pain and suffering, and mental anguish); *see also Amato v. City of Saratoga Springs*,

15

170 F.3d 311, 317 (2d Cir.1999) ("While the main purpose of a § 1983 damages award is to compensate individuals for injuries caused by the deprivation of constitutional rights, a litigant is entitled to an award of nominal damages upon proof of a violation of a substantive constitutional right even in the absence of actual compensable injury."). Accordingly, there are issues of fact on the excessive force claim that preclude summary judgment.

E. QUALIFIED IMMUNITY

Defendants also contend that they are immune from suit on all claims under the principle of qualified immunity. Police officers "generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

1. False Arrest and Malicious Prosecution

A government actor may be shielded from liability for civil damages if "his conduct did not violate plaintiff's clearly established rights, or if it would have been objectively reasonable for the official to believe that his conduct did not violate plaintiff's rights." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 385 (2d Cir. 2003). "The availability of the defense depends on whether a reasonable officer could have believed his action to be lawful, in light of clearly established law and the information he possessed." *Weyant*, 101 F.3d at 858 (internal quotation marks, citation and alterations omitted). "The right not to be arrested or prosecuted without probable cause has, of course, long been a clearly established constitutional right." *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).

Thus, an arresting officer is entitled to qualified immunity on a claim of arrest without probable cause and of malicious prosecution if either: (a) it was objectively reasonable for the officer to believe that probable cause existed; or (b) officers of reasonable competence could disagree on whether the probable cause test was met. *See O'Neill v. Town of Babylon*, 986 F.2d 646, 649-50 (2d Cir. 1993); *see also Lennon v. Miller*, 66 F.3d 416, 424-25 (2d Cir. 1995); *Golino*, 950 F.2d at 870.

The Court acknowledges that "the issue of the reasonableness of an arrest or a search for purposes of a Fourth Amendment inquiry is distinct from the issue of objective reasonableness for purposes of a qualified immunity inquiry." *Provost v. City of Newburgh*, 262 F.3d 146, 168 n.5 (2d Cir. 2001); *see also Anderson v. Creighton*, 483 U.S. 635, 641 (1987) ("It simply does not follow immediately from the conclusion that it was firmly established that warrantless searches not supported by probable cause and exigent circumstances violate the Fourth Amendment that [plaintiff]'s search was objectively legally unreasonable."). In *Anderson*, the Supreme Court held that "it is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable." 483 U.S. at 641.

The Second Circuit has defined this standard, which is often referred to as "arguable probable cause," as follows:

> Arguable probable cause exists when a reasonable police officer in the same

circumstances and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in the light of well established law. It is inevitable that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and we have indicated that in such cases those officials – like other officials who act in ways they reasonably believe to be lawful – should not be held personally liable.

*Cerrone v. Brown*, 246 F.3d 194, 203 (2d Cir. 2001) (quotations and citations omitted). Moreover, under that standard, "an 'arresting officer is entitled to qualified immunity as a matter of law if the *undisputed facts* and all permissible inferences favorable to the plaintiff show . . . that officers of reasonable competence could disagree on whether the probable cause test was met.'" *McCllellan*, 439 F.3d at 147-48 (quoting *Robison*, 821 F.2d at 921).

As discussed *supra*, viewing the evidence most favorably to plaintiffs, including drawing all reasonable inferences in their favor, plaintiffs have created a material issue of fact as to whether the marijuana seized during the execution of the search was only found on the person of Roosevelt. Under the circumstances of this case, this disputed issue of fact also precludes summary judgment on the issue of qualified immunity. As the Second Circuit has noted, "[c]ompanionship with one known to be in possession of narcotics is insufficient to establish probable cause." *United States v. Patrick*, 899 F.2d 169, 175 (2d Cir. 1990) (collecting cases); *see also United States v. Moreno*, 897 F.2d 26, 31 (2d Cir. 1990) ("more than physical companionship and/or a working relationship is required to establish probable cause with respect to a companion of a narcotics possessor") (citation and quotations omitted). Therefore, if plaintiffs can establish that the only marijuana found in the apartment was on the person of Roosevelt (and none was found on the dresser in the bedroom of Jesse and James, or anywhere else in the apartment) and the only connection by plaintiffs to Roosevelt was that they lived in the same apartment, there would not have even been arguable probable cause to arrest or prosecute plaintiffs based upon their mere presence during the search. Under such facts, if proven, qualified immunity would be unavailable. *See, e.g., Heath*, 455 F.3d at 56 (noting in dicta that "we cannot say that the cocaine assertedly dropped by [one individual in residence] created probable cause to arrest [a second occupant], because these facts would not, in and of themselves, lead a person of reasonable caution . . . to believe that [the second occupant] was complicit in [the other individual's] apparent possession of the cocaine").

The same analysis would apply with respect to the decision to prosecute Jesse and James for the possession of the ammunition that the defendants claim was found in a closet in Roosevelt's bedroom. More specifically, under plaintiffs' version of the facts, there was absolutely nothing connecting them to the ammunition, which were hidden in a separate bedroom belonging to Roosevelt, and there was therefore no basis to conclude that they had any knowledge of, or dominion or control over, such ammunition.[13] Plaintiffs

---

[13] This type of situation, where the contraband is hidden in a closet, is distinguishable from those cases, discussed *supra*, where probable cause to arrest an occupant has been found to exist where

may be able to defeat the qualified immunity defense if such facts are believed by the jury. *See Holmes v. Kucynda*, 321 F.3d 1069, (11th Cir. 2003) (fact question precluded summary judgment on qualified immunity issue where, under plaintiff's version of facts, "[o]ther than [plaintiff's] mere presence in the house, there was absolutely nothing at the time of her arrest to support a plausible inference that she had knowledge of, or control or dominion over, the contraband").

In sum, according to plaintiff's account of the events, and viewing the facts in the light most favorable to plaintiff, probable cause was completely lacking as to Jesse and James and was fabricated by the defendants by falsely attributing to them the marijuana that was found on the person of Roosevelt and attempting to link them to bullets that were found in Roosevelt's closet. Since there is a disputed issue of material fact as to whether the circumstances would allow an objectively reasonable officer to believe that probable cause existed to arrest and then prosecute Jesse and James, defendants are not entitled to qualified immunity at the summary judgment stage. *See Weyant*, 101 F.3d at 858 (holding that where police officers' version of facts is "sharply disputed," "the matter of the officers' qualified immunity therefore cannot be resolved as a matter of law"); *Oliveira v. Mayer*, 23 F.3d 642, 649 (2d Cir. 1994) ("Though [qualified] immunity ordinarily should be decided by the court, that is true only in those cases where the facts concerning the availability of the defense are undisputed; otherwise, jury consideration is normally required.") (internal citations and quotation marks omitted); *see also Webster*, 333 F. Supp. 2d at 206 (denying qualified immunity as a matter of law for malicious prosecution claim where dispute existed as to facts which constituted alleged basis for probable cause); *Neal v. City of Harvey, Ill.*, 1 F. Supp. 2d 849, 858 (N.D.Ill. 1998) (issues of fact precluded summary judgment on, among other things, malicious prosecution claim where plaintiff asserted that officer planted drugs on him).

Based upon the record before the Court, defendants' motion for summary judgment on the false arrest and malicious prosecution claims on the ground of qualified immunity must be denied. *See, e.g., Dallas*, 1997 U.S. Dist. LEXIS 18390, at *25-26.

### 2. Excessive Force

With respect to Melinda's excessive force claim, the defendants argue that they are entitled to qualified immunity, even if the use of force was objectively unreasonable under the Fourth Amendment. The Court rejects this assertion. In the instant case, viewing the evidence in the light most favorable to plaintiff, a reasonable officer should have known that the kicking of a handcuffed resident subdued on the floor during the execution of a search violates a clearly established constitutional right not to be subjected to excessive force during a search. *See, e.g., Johnson*, 2006 WL 2354815, at *5 (qualified immunity unavailable at summary judgment stage because "it could not be objectively reasonable for [the officer] to have

---

contraband is found *in plain view* in a residence. *See, e.g., Heath,* 455 F.3d at 57 (collecting cases which held that probable cause existed to arrest a resident where contraband was found in plain view); *see also United States v. Finch*, 998 F.2d 349, 356 (6th Cir. 1993) (no probable cause to arrest defendant's mother and girlfriend in a residence at the time of the search where, among other things, there was no basis to conclude they had knowledge of cocaine hidden in garage and other location by the defendant).

believed that the use of gratuitous force beyond what is necessary to subdue an individual during a search is allowed under the law"); *Pierre-Antoine*, 2006 WL 1292076, at *6 (holding that a reasonable officer would have known that repeatedly punching, kicking and stomping a subdued individual violated the clearly established constitutional right not to be subjected to excessive force during arrest) (citing *Maxwell*, 380 F.3d at 108); *see also Smith v. Fields*, No. 95-CV-8374 (DAB), 2002 WL 342620, at *7 (S.D.N.Y. Mar. 4, 2002) ("[O]nce the Plaintiff was pulled out of the car, taken to the ground, and handcuffed, the kicks and slaps that [the officer] allegedly delivered to the Plaintiff's head and body, absent any contemporaneous resistence, was objectively unreasonable."); *Nogue v. City of New York*, No. 98 Civ. 3058 (JG), 1999 WL 669231, at *9 (E.D.N.Y. Aug. 27, 1999) (finding that "a reasonable jury could conclude that it was objectively unreasonable for the arresting officers to believe that their conduct comported with the Fourth Amendment" where the officers "kicked and punched [plaintiff] while he was lying on the ground"); *Phelps v. City of Indianapolis*, No. 02-CV-1912 (DFH) (VSS), 2004 WL 1146489, at *1 (S.D. Ind. May 10, 2004) (holding that "repeated and unnecessary kicks and blows to complaint suspects lying on the ground in handcuffs" would constitute "violations of clearly established constitutional law.").

If the jury determines that Melinda's account of the events is entirely accurate and she suffered a legally cognizable injury, this case would not involve "the hazy border between excessive and acceptable force," *Saucier v. Katz*, 533 U.S. 194, 206 (2001), but rather the violation of a clearly established right for which qualified immunity is unavailable. In short, the Court finds that there is a material issue of disputed fact that needs to be decided by a jury – namely, whether excessive force was used on Melinda during the execution of the search in violation of her Fourth Amendment rights. Accordingly, summary judgment is denied with respect to Melinda's excessive force claim.

### III. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment as to the claims of plaintiffs Jesse Davis and James Davis for false arrest against the individual defendants is DENIED. The motion for summary judgment as to plaintiff Melinda Davis' claim for excessive force against the individual defendants is DENIED. The motion for summary judgment as to the claim of plaintiffs Jesse Davis and James Davis for malicious prosecution is DENIED as to Detective Paulsen and GRANTED as to the other individual defendants.

Moreover, the following claims have been abandoned: (1) the claims brought by Terry Davis and Roosevelt Davis; (2) the municipal liability claim against the City of New York; and (3) the state claims.[14] Accordingly,

---

[14] Based upon counsel for plaintiffs' statement at oral argument listing which claims his clients are continuing to pursue (*i.e.*, false arrest, malicious prosecution, and excessive force), the Court treats the municipal liability claim against the City of New York, pursuant to *Monell v. Dep't of Social Svcs.*, 436 U.S. 658 (1978), as abandoned. In any event, even if plaintiff intends to proceed with the municipal liability claim as part of the claims against the individual defendants, the Court finds that plaintiffs have put forth no evidence in support of such a claim that would survive summary judgment. Consequently, the Court finds that the *Monell* claim must be dismissed

summary judgment on these claims is GRANTED and the caption is hereby amended to delete these parties from the lawsuit.

---

because plaintiff has failed to adduce any evidence that the alleged unconstitutional acts committed by the defendant officers were connected to any policy, custom or practice beyond mere speculation and conjecture. *See, e.g., Prowiser v. Bon-Ton, Inc.*, No. 05-CV-0166 (WCC), 2006 WL 897197, at *6 (S.D.N.Y. Apr. 6, 2006) ("The doctrine of *respondeat superior* is insufficient to support a claim against a municipal employer, as are conclusory assertions of a custom or policy in the absence of factual allegations or inferences.") (citing *Zahra v. Town of Southold*, 48 F.3d 674, 678 (2d Cir. 1995)); *see also Young v. Cty. of Fulton*, 999 F. Supp. 282, 285-86 (N.D.N.Y.), *aff'd* 160 F.3d 899 (2d Cir. 1998) (granting summary judgment and dismissing municipal liability claim under § 1983 because plaintiffs relied solely on conjecture and hyperbole to indicate a custom or practice on the part of the defendants); *Roberts by Roberts v. City of New York*, 753 F. Supp. 480, 485 (S.D.N.Y. 1990) (same).

Similarly, although not explicitly abandoned at oral argument, it does not appear that plaintiffs are continuing to pursue any analogous claims arising under state law for false arrest and malicious prosecution. For example, plaintiffs do not respond to defendants argument that any state law claims must be dismissed for failure to file a timely notice of claim and are time-barred. In any event, even if plaintiffs are not abandoning these state law claims, the Court finds that summary judgment in defendants' favor is warranted based upon the grounds identified by defendants – namely, failure to file a notice of claim and failure to commence the action within the applicable limitations period. *See* Gen. Mun. Law §§ 50-e and 50-i.

SO ORDERED.

_____

JOSEPH F. BIANCO
United States District Judge

Dated: February 15, 2007
Central Islip, New York

\* \* \*

The attorneys for plaintiffs are John Wyman Cobb, Cobb & Cobb, Esqs., P.O. Box 419, 233 Route 17, Tuxedo, New York 10987, and William W. Cobb, Law Offices of William W. Cobb, PLC, 213 Main Street, P.O. Box 282, Hyde Park, Vermont, 05655. The attorney for defendants is Susan P. Scharfstein, New York City Law Department, 100 Church Street, Room 6-119, New York, New York 10007.